IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DESIGN PAC INTERNATIONAL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-1731-L |
| | § | |
| CUSTOM DIRECT, INC. | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Custom Direct, Inc. has filed a motion to compel arbitration in this diversity action brought by plaintiff asserting claims for breach of contract and breach of warranty under Texas law. For the reasons stated herein, the motion should be granted.

I.

On or about January 29, 2007, Plaintiff Design Pac International, a designer of specialty shipping and packaging products, entered into an agreement with defendant to purchase more than 200,000 neck wraps for distribution to one of its customers, BeautiControl, Inc. (*See* Plf. Sec. Am. Compl. at 3, ¶ 8 & 5-6, ¶ 18).[1] Defendant agreed to deliver the neck wraps to plaintiff in 10 shipments of 21,000 each. (*Id.* at 5-6, ¶ 18). Although four of these shipments allegedly were infested with insects, (*see id.* at 6-7, ¶¶ 21 & 24), plaintiff ordered another 100,000 neck wraps from defendant on or about January 31, 2008. (*See id.* at 8, ¶ 32). The first shipment of neck wraps purchased by plaintiff under the second contract arrived on June 2, 2008, and were distributed to

---

[1] A "neck wrap" is a custom-made pillow filled with flaxseed and herbal essence that is used to relieve neck and back pain. (*See* Plf. Sec. Am. Compl. at 3-4, ¶¶ 8-9).

BeautiControl. (*See id.* at 9, ¶¶ 33-34). Plaintiff subsequently rejected that shipment after learning that the neck wraps had a foul-smelling odor. (*See id.* at 9, ¶ 34). Thereafter, plaintiff cancelled the remaining shipments of neck wraps due to complaints from BeautiControl about the quality of the product. (*See id.* at 9, ¶¶ 36-37).

On September 20, 2008, plaintiff sued defendant in federal district court for breach of contract and breach of various express and implied warranties.[2] Defendant now moves to compel arbitration of those claims under a Non-Solicitation Non-Disclosure Agreement ("NDA") entered into by the parties, which provides, in pertinent part:

> Any dispute or disagreement arising out of or relating to this Agreement shall be submitted to binding arbitration by a panel of three neutral arbitrators who have knowledge of the packaging industry and shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., in an expeditious manner.

(Def. App., Exh. 1 at 3, ¶ 7). While acknowledging that the NDA contains an arbitration clause, plaintiff contends that the agreement to arbitrate does not cover the claims made the basis of this suit. The issues have been fully briefed by the parties and the motion is ripe for determination.

II.

The Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

---

[2] Federal jurisdiction is proper because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

9 U.S.C. § 3. The language of this section is mandatory. Where the court finds that the parties agreed to arbitrate a dispute, its role is limited to enforcing that agreement. *See AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649-50, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). The decision whether to enforce an arbitration clause involves a two-step inquiry. First, the court must determine whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The court then must consider whether any statute or policy renders the claims non-arbitrable. *Mitsubishi Motors*, 105 S.Ct. at 3355; *Hill*, 367 F.3d at 429.

A.

The only issue raised by the parties in their written submissions is whether plaintiff agreed to arbitrate its breach of contract and breach of warranty claims against defendant. In making that determination, the court must decide whether there is a valid agreement to arbitrate and, if so, whether the dispute falls within the scope of that agreement. *See American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003), *citing Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Here, plaintiff acknowledges that the NDA contains a valid arbitration agreement, but argues that the claims alleged in this lawsuit do not come within the scope of that agreement. Instead, plaintiff maintains that its claims involving the neck wraps arise under two purchase orders, neither of which contain an agreement to arbitrate. (*See* Plf. Resp. Br. at 3).

Plaintiff and defendant agreed to arbitrate not only disputes "arising out of" the NDA, but also disputes or disagreements "relating to" the NDA. (*See* Def. App., Exh. 1 at 3, ¶ 7). In this circuit, such an arbitration clause is considered "broad." *See In re Complaint of Hornbeck Offshore*

*(1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985), citing *National Railroad Passenger Corp. v. Chesapeake and Ohio Railway Co.*, 551 F.2d 136, 140 (7th Cir. 1977). "Broad arbitration clauses . . . are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Production Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). The reach of a broad arbitration clause may even extend to claims arising under a separate agreement. *See, e.g., Personal Security & Safety Systems Inc. v. Motorola*, 297 F.3d 388, 394 (5th Cir. 2002) (arbitration provision which covered "any and all claims [ ] arising out of or relating to" an agreement applied to claims arising under a separate contract).

Where the parties include a broad arbitration clause in an agreement that is "essential" to the overall transaction, the court will presume that the parties intended the clause to reach all aspects of the transaction--including aspects governed by other contemporaneously executed agreements that are part of the same transaction. *Id.* It is only necessary that the dispute "touch" matters covered by the contract containing the agreement to arbitrate. *See Ramco Energy*, 139 F.3d at 1067. In the instant case, the court has little difficulty concluding that the dispute involving the neck wraps shipped by defendant "touches" on matters covered by the NDA. One purpose of the NDA was to prevent defendant from soliciting business from plaintiff's customer, BeautiControl. To that end, the NDA provides:

> Custom Direct, Inc. agrees that it will not initiate any contact, written, oral or electronic with BeautiControl regarding its business. All communications and contacts of any nature with BeautiControl to be through Design Pac International's authorized representative, Tim Brennan, or such other individual as Design Pac International from time to time may designate.

(Def. App., Exh. 1 at 2, ¶ 4). Without the NDA, plaintiff never would have ordered any neck wraps from defendant. Thus, the NDA is "essential" to the overall transaction between plaintiff and defendant. Moreover, there is no express language in the purchase orders or other evidence that the parties did not intend to arbitrate all issues arising out of their business relationship. In light of these circumstances, the court determines that plaintiff's breach of contract and breach of warranty claims fall within the scope of the broad arbitration clause in the NDA. *See Innerwireless, Inc. v. Johnson Controls, Inc.*, No. 3-07-CV-312-M, 2007 WL 2428591 at *3-4 (N.D. Tex. Aug. 27, 2007) (all of plaintiff's claims referable to arbitration pursuant to broad arbitration clause contained in one of several agreements memorializing business relationship between the parties).

B.

A district court may dismiss, rather than stay, an action where all issues are properly subject to arbitration. *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Here, all claims asserted by plaintiff fall within the scope of the arbitration agreement. The only possible role a court could have would be to review the arbitration award once the proceedings are concluded. *See Alford*, 975 F.2d at 1164. Under these circumstances, the case should be dismissed rather than stayed.

### RECOMMENDATION

Defendant's motion to compel arbitration [Doc. #18] should be granted. This case should be dismissed without prejudice in favor of arbitration. The parties should be directed to confer in an attempt to reach agreement on the composition of a three-member arbitration panel. If agreement cannot be reached within 10 days after this recommendation is adopted by the district judge, the court will appoint three qualified arbitrators upon the application of either party. *See* 9 U.S.C. § 5.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 28, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE